598 F.2d 1046
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
SOUTH EAST COAL COMPANY, Employer,
and
Old Republic Insurance Company, Carrier,
and
Obie Spicer, Claimant, Respondents.
 No. 78-3507.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 21, 1979.
Decided May 29, 1979.
 
 Laurie M. Streeter, Kenneth F. Noto, Gary P. Brady, U. S. Dept. of Labor, Washington, D. C., for petitioner.
 John L. Kilcullen, Washington, D. C., for South East Coal Co.
 J. W. Craft, Jr., Craft, Barrett, Haynes & Ward, Hazard, Ky., for Old Republic Insurance Co.
 Richard D. Cooper, Hazard, Ky., for Obie Spicer.
 Before EDWARDS, Chief Judge, and WEICK and LIVELY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 The narrow issue in this case is whether the Black Lung Disability Trust Fund (the Trust Fund) may be held liable for attorney's fees awarded to a black lung claimant whose work as a coal miner ended before January 1, 1970. The Benefits Review Board (BRB) held that the Trust Fund is liable for the payment of such an award of attorney's fees. We agree and affirm.
 
 
 2
 The Director, Office of Workers' Compensation Programs (the Director) concedes that the Trust Fund is liable for payment of the benefits awarded to the claimant, but contends that the BRB was without authority to direct payment of attorney's fees by the Trust Fund. If this position is correct, the respondents South East Coal Company and its insurance carrier Old Republic Insurance Company would be liable for the payment of the fees under an award of the administrative law judge who found that the claimant was entitled to black lung benefits.
 
 
 3
 The claimant Obie Spicer worked in underground mines from 1928 to 1962. He filed a claim for black lung benefits in 1974. Under existing law his last coal mine employer was held liable for the payment of benefits and legal fees upon a finding that Spicer was totally disabled from pneumoconiosis which arose out of his employment in the mines. South East Coal Company was his last employer. While the employer's appeal was pending before the BRB, in 1977 Congress enacted two statutes which made significant changes in the existing scheme of black lung compensation.
 
 
 4
 One of the 1977 amendments changed the previous requirement that the last coal mine employer pay black lung benefits of miners whose employment ended before January 1, 1970 to provide that payment of these claims be shifted to the newly created Trust Fund. This amendment is entitled the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95-239, 92 Stat. 99 (to be codified at 30 U.S.C. § 932(j)) (hereafter Reform Act). The Trust Fund was provided for in § 3(a)-(c) of the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95-227, 92 Stat. 13 (to be codified at 30 U.S.C. § 934a) (hereafter the Revenue Act). Section 3(d) of the Revenue Act, (to be codified at 30 U.S.C. § 934) determines what payments may be made from the Trust Fund, as follows:
 
 
 5
 § 934
 
 
 6
 (a) Amounts in the Black Lung Disability Trust Fund (referred to in this section as the "fund") established under section 934a of this title shall be available, as provided by appropriation Acts, for
 
 
 7
 (1) the payment of benefits under section 932 of this title in any case in which the Secretary determines that
 
 
 8
 (A) the operator liable for the payment of such benefits
 
 
 9
 (i) has not commenced payment of such benefits within 30 days after the date of an initial determination of eligibility by the Secretary, or
 
 
 10
 (ii) has not made a payment within 30 days after that payment is due.
 
 
 11
 (B) there is no operator who is required to secure the payment of such benefits,
 
 
 12
 (2) the payment of obligations incurred by the Secretary with respect to all claims of miners or their survivors in which the miner's last coal mine employment was before January 1, 1970,
 
 
 13
 (3) the repayment into the Treasury of the United States of an amount equal to the sum of the amounts expended by the Secretary for claims under this part which were paid before April 1, 1978, except that the fund shall not be obligated to pay or reimburse for benefits paid attributable to periods of eligibility before January 1, 1974,
 
 
 14
 (4) the repayment of, and the payment of interest on, advances to the fund under subsection (b)(2) of section 934a of this title,
 
 
 15
 (5) the payment of all expenses of operation and administration on and after the effective date of the Black Lung Benefits Reform Act of 1977 (or any other Act determined by the Secretary to contain substantially the same provisions) under this part (other than under section 937(a) or 943 of this title), including the administrative expenses incurred by the Department of Labor under this part, the administrative expenses incurred by the Department of the Treasury in administering subchapter B of chapter 32 of Title 26 and in carrying out its responsibilities with respect to the fund, and any expenses incurred by the Department of Health, Education, and Welfare in connection with the administration of this part, and
 
 
 16
 (6) the reimbursement of operators for amounts paid by such operators (other than as penalties or interest) before April 1, 1978, in satisfaction (in whole or in part) of claims of miners whose last employment in coal mines was terminated before January 1, 1970.
 
 
 17
 Following initial funding from general revenues of the government, the Trust Fund will be financed exclusively by the proceeds of a new excise tax on all coal mined in the United States and sold by the producer. The effect of this change is to shift liability from the last employer (or the government where no "responsible" employer exists) to the coal industry as a whole for benefits to those who file claims after December 31, 1973 but who were not employed miners on the effective date of the first black lung legislation (January 1, 1970).
 
 
 18
 One of the difficulties in this case arises from the incorporation of another federal compensation law to carry out the congressional scheme of providing government compensation for old black lung claims while requiring employer responsibility for current claims. Under the original legislation, black lung claims filed on or before December 31, 1972, if allowed, were to be paid by the government through the Department of Health, Education and Welfare. These claims were processed under Part B, Subchapter IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 921-924 (1970) (the 1969 Act). Claims filed after December 31, 1972 were to be processed under Part C, Subchapter IV of the same Act, 30 U.S.C. §§ 931-936 (1970). The last coal mine employer, if available, was to be liable for payments. The original statutory scheme called for Part C claims to be filed with the applicable state workmen's compensation board beginning on January 1, 1973 (later extended to January 1, 1974). However, the right to claim benefits pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 Et seq. (1970) (hereafter LHWCA) was provided where state workmen's compensation laws did not make adequate provision for black lung benefits. In the 1969 Act the LHWCA was made applicable to black lung claims by a "crossover" statement that its provisions "shall (except as otherwise provided in this subsection and except as the Secretary shall by regulation otherwise provide) be applicable to each operator of an underground coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine." 30 U.S.C. § 932(a) (1970). Section 7(a)(3) of the Reform Act changed § 932(a) to read in part as follows:
 
 
 19
 . . . the provisions of (the LHWCA) shall (except as otherwise provided in this subsection or by regulations of the Secretary And except that references in (the LHWCA) to the employer shall be considered to refer to the trustees of the fund, as the Secretary considers appropriate and as is consistent with the provisions of section 424 (30 U.S.C. § 934)) be applicable . . . . (emphasis added).
 
 
 20
 There is no explicit reference to attorney's fees in Part C of the 1969 Act or in either of the 1977 acts. However, one of the provisions of the LHWCA adopted in Part C of the 1969 Act provides for the award of "a reasonable attorney's fee against the employer or carrier . . . which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final." 33 U.S.C. § 928(a) (1976). The BRB held that the language of the 1977 Reform Act which states that references in the LHWCA to the employer shall be considered to refer to the trustees of the Trust Fund is all inclusive and is not limited to those provisions which make an employer liable for benefits. In seeking review of this decision the Director contends that there is no statutory basis for assessing attorney's fees against the Trust Fund.
 
 
 21
 The Director argues that since neither the Reform Act nor the Revenue Act provides for attorney's fees the "American Rule" precludes an award of fees, citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Director also relies on 28 U.S.C. § 2412 which generally prohibits the award of attorney's fees against government agencies in civil actions. It is clear, however, that a specific statutory authorization for payment of attorney's fees constitutes an exception both to the general rule and the statutory prohibition. Alyeska, supra, 421 U.S. at 260-68, 95 S.Ct. 1612; 28 U.S.C. § 2412, Supra. The Director asserts that the 1977 amendments sought only to speed up the payment of black lung benefits to miners whose work in the mines had ceased before 1970 and was not concerned in any way with attorney's fees. He points to the use of such language as "satisfaction of claims of miners" and the absence of references to legal fees to support his argument.
 
 
 22
 There are only three possible sources for payment of attorney's fees in this case: the employer/carrier, the Trust Fund or the claimant. No one seriously contends that Congress intended to put the claimant in a worse position than before by enacting the 1977 amendments. Under the pre-existing law an employer such as South East Coal Company which declined to pay a claim for compensation within 30 days of receiving written notice of the claim was required to pay reasonable attorney's fees upon successful prosecution of the claim for benefits. 33 U.S.C. § 928(c) (1976).[1] We conclude that this is one of the "references . . . to the employer" which must now be "considered to refer to the trustees of the (Trust Fund) . . . " It appears that, by an extremely convoluted process,[2] Congress has indeed provided for the allowance of attorney's fees in the type case now before us and has shifted liability for their payment to the Trust Fund. A fair reading of the entire text of amended 30 U.S.C. § 934(a), Supra, discloses a comprehensive transfer to the Trust Fund of the obligation to make payments under Part C, Inter alia, with respect to claims of miners whose coal mine employment ended prior to January 1, 1970. "All expenses of operation" are to be paid by the Fund, including "obligations incurred by the Secretary" and reimbursable "amounts paid" by mine operators in connection with these claims. 30 U.S.C. § 934(a)(5), (2), (6). There is nothing in the statutory language or the legislative history which indicates an intention to shift liability for black lung benefits only while leaving an employer liable for attorney's fees. A pre-1970 miner who applies for black lung benefits after January 1, 1974 and is found qualified is to obtain his entire remedy from a single source the Trust Fund.
 
 
 23
 In the only reported case involving this question, the Third Circuit has reached the same conclusion. See Republic Steel Corporation v. U. S. Department of Labor, 590 F.2d 77 (1978). Though counsel for the Director made some attempt at oral argument to distinguish that case from the present one, we can perceive no material distinctions. Since Judge Weis fully answered every argument in Republic Steel which the Director has made in this case, there is no need to address them all again here. Our decision rests upon the determination that Congress specifically provided for payment of attorney's fees to black lung claimants in the position of Obie Spicer, taking such cases outside the operation of the "American Rule" and 28 U.S.C. § 2412. Congress further directed that such payments be made from the Trust Fund.
 
 
 24
 The petition for review is denied. The decision of the BRB is enforced and affirmed. Costs will be paid by the Director.
 
 
 
 [1]
 It is immaterial that the Director never declined to pay Spicer's claim. The employer declined and with the enactment of the 1977 amendments the Trust Fund was placed in the position of the employer. There is no contention that the 1977 amendments did not apply retroactively
 
 
 [2]
 Problems created by the cross-reference to provisions of the LHWCA in black lung legislation have been noted by various courts. See particularly, Director v. Alabama By-Products Corp., 560 F.2d 710, 720 (5th Cir. 1977), where Judge Goldberg refers to "our march through the statutory thicket . . . ."