DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Opal BIVENS, George Hill, Respondents.

Nos. 83–3802, 84–3071.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1985.

Decided March 25, 1985.

J. Michael O'Neill, Jeffrey J. Bernstein (argued), U.S. Dept. of Labor, Washington, D.C., for petitioner.

Joseph H. Kelley (argued), Leland Monhollon, P.S.C., Madisonville, Ky., Benefits Review Bd., Washington, D.C., for respondent in No. 83–3802.

Benefits Review Bd., Washington, D.C., J. Miles Gibson, Barkan & Neff, L.P.A., Sanford Meizlish (argued), Columbus, Ohio, for respondent in No. 84–3071.

Before KENNEDY, CONTIE and MILBURN, Circuit Judges.

CONTIE, Circuit Judge.

In these two consolidated cases the Director of the Office of Workers' Compensation Programs petitions for review of a decision of the Benefits Review Board. The Director argues that the Board improperly assessed attorneys' fees against the Black Lung Disability Trust Fund. We agree.

1. *See* 33 U.S.C. § 928(c).

## I.

In case number 84–3071 the claimant, George Hill, filed for black lung benefits on May 15, 1979. Hill retained counsel to assist in the prosecution of the claim on June 4, 1979. The Office of Workers' Compensation Programs scheduled a medical examination of Hill, which was conducted on August 1, 1979. On November 15, 1979 a deputy commissioner issued an award of benefits. The award was assessed against the Trust Fund because Hill had not worked in a coal mine after December 31, 1969.

In case number 83–3802 the claimant, Opal Bivens, filed a claim as a widow of a deceased coal miner on November 19, 1979. She retained counsel on October 7, 1980. Bivens submitted evidence of her late husband's coal mine employment on November 19 and December 9, 1980. On March 16, 1981 a deputy commissioner issued an award of benefits. Since Bivens' deceased husband had not worked in a coal mine after December 31, 1969, the award ran against the Trust Fund.

In each case the claimant's attorney petitioned for an award of fees. The deputy commissioner in each case granted the request, but assessed liability for the fee against the award of benefits.[1] Both Hill and Bivens appealed to the Benefits Review Board. The Board held, pursuant to *Yokley v. Director, Office of Workers' Compensation Programs*, 3 Black Lung Rep. 1–230 (1981), that the Trust Fund is liable for the fees. The Director petitions for review of these judgments.

## II.

To understand this case requires some familiarity with the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* In 1969, Congress enacted the Federal Coal Mine Health and Safety Act. *See* Pub.L. No. 91–173, 83 Stat. 742 (1969). Title IV of this Act, which provides benefits for miners disabled due to pneumoconiosis, has since

become known as the Black Lung Benefits Act. *See* 30 U.S.C. § 901(b) (short title). Title IV is, in turn, subdivided into three parts. Part A contains general provisions. *See* 30 U.S.C. §§ 901–904. Part B, codified at 30 U.S.C. §§ 921–925, governs claims filed on or before December 31, 1973. *See* 30 U.S.C. §§ 923(a), 924(a)(1). The Secretary of Health and Human Services is responsible for both adjudicating these claims and paying benefits to eligible claimants. *See* 30 U.S.C. §§ 902(c), 921(a). Part C, codified at 30 U.S.C. §§ 931–945, governs claims filed on or after January 1, 1974. *See* 30 U.S.C. §§ 931(a), 932(a). Part C is administered by the Secretary of Labor. *See* 30 U.S.C. § 902(c).

The scheme of the 1969 Act was to provide a brief period of federal aid to miners under Part B and eventually to transfer responsibility for benefits to state workmen's compensation programs. Thus, under Part C, claims submitted after December 31, 1973[2] are to be "filed pursuant to the applicable State workmen's compensation law." *See* 30 U.S.C. § 931(a). If no state workmen's compensation law provides adequate coverage, as determined by the Secretary of Labor, *see* 30 U.S.C. § 931(b), then a miner may proceed under the provisions of Part C.

The 1969 Act in its original and current form imposes liability on coal mine operators for the payment of Part C benefits. *See* 30 U.S.C. § 932(b), (c). To accomplish this, Congress incorporated by reference certain provisions of the Longshoremen and Harbor Workers Compensation Act (hereinafter, L.H.W.C.A.), *see* 30 U.S.C. § 932(a), which imposes liability on employers for injuries arising out of stevedoring employment. Until 1978, the Secretary of Labor assumed responsibility, out of funds appropriated from general revenues by Congress, for paying benefits when the responsible coal mine operator either could not be identified or failed to pay benefits. *See* Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, § 424, 83 Stat. 742, 798 (1969) (formerly codified at 30 U.S.C. § 934). With the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11 (1978), Congress acted to end all federal financial responsibility for disabled miners' benefits under Part C. It accomplished this by establishing the Black Lung Disability Trust Fund. Congress imposed a sales tax on coal sold by producers and placed the money generated thereby into the Trust Fund. *See* 26 U.S.C. § 4121 (imposing tax); 26 U.S.C. § 9501(b) (appropriating revenues to Trust Fund). The Trust Fund then pays Part C benefits where there is no operator liable for the benefits or where an operator who is liable refuses to pay. *See* 26 U.S.C. § 9501(d). Since the Black Lung Benefits Act provides that an operator is not responsible for benefits where the miner did not work in the operator's mine after December 31, 1969, *see* 30 U.S.C. § 932(c), there will necessarily be no liable operator for a miner whose last mine work occurred before 1970. Accordingly, 26 U.S.C. § 9501(d)(1)(B) provides for the payment of such benefits[3] and 26 U.S.C. § 9501(d)(2) provides that the Trust Fund is to assume any obligations the Secretary had incurred as to such benefits prior to the creation of the Trust Fund.[4] Since Hill and Bivens' late husband did not work in a mine after December 31, 1969, the Trust Fund is liable for benefits in these two cases.

---

**2.** The Act originally provided that Part C would cover claims filed after December 31, 1972. *See* Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, § 421, 83 Stat. 742, 795 (1969). The date dividing Parts B and C was subsequently set back one year, to December 31, 1973. *See* Black Lung Benefits Act of 1972, Pub.L. No. 92–303, § 5(3), 86 Stat. 150, 155 (1972).

**3.** This provision mandates payments from the Trust Fund when "there is no operator who is liable for the payments of such benefits." *See* 26 U.S.C. § 9501(d)(1)(B).

**4.** This provision authorizes "the payment of obligations incurred by the Secretary of Labor with respect to all claims of miners or their survivors in which the miner's last coal mine employment was before January 1, 1970." *See* 26 U.S.C. § 9501(d)(2).

As noted above, the Black Lung Benefits Act incorporates certain provisions of the L.H.W.C.A. In 1972, Congress amended the L.H.W.C.A. by adding a provision allowing claimants in certain cases to recover attorneys' fees from their employer or their employer's insurance carrier. This provision is among those sections of the L.H.W.C.A. incorporated by 30 U.S.C. § 932(a). It provides:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

See 33 U.S.C. § 928(a).[5] In the same year that Congress created the Trust Fund, it also amended other provisions of the Black Lung Benefits Act. With the Black Lung Benefits Reform Act of 1977, Congress added to 30 U.S.C. § 932(a) the following italicized language:

> During any period after December 31, 1973, in which a State workmen's compensation law is not included on the list published by the Secretary under section 931(b) of this title, the provisions of sections 901 to 921 and 922 to 950 of title 33 (other than the provisions contained in sections 901, 902, 903, 904, 908, 909, 910, 912, 913, 929, 930, 931, 932, 933, 937, 938, 941, 943, 944, 945, 946, 947, 948, 948a, 949, and 950 thereof), shall (except as otherwise provided in this subsection or by regulations of the Secretary *and except that references in such sections 901 to 921 and 922 to 950 of title 33 to the employer shall be considered to refer to the trustees of the fund, as the Secretary considers appropriate and as is consistent with the provisions of section 9501(d) of title 26*), be applicable to each operator of a coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine, or with respect to entitlements established in paragraph (5) of section 921(c) of this title. In administering this part, the Secretary is authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part and thereafter those provisions shall be applicable to such operator.

See Pub.L. No. 95–239, § 7(a)(3), 92 Stat. 95, 98 (1978), *as amended by* Black Lung Benefits Revenue Act of 1981, Pub.L. No. 97–119, § 104(b)(3), 95 Stat. 1635, 1639 (1981) (codified at 30 U.S.C. § 932(a)).

Soon after the 1978 amendments, litigants realized that it is possible to read 30 U.S.C. § 932(a) together with 33 U.S.C. § 928(a) to require the Trust Fund to pay attorneys' fees in the same manner that an employer is liable for attorneys' fees under the L.H.W.C.A. A series of cases held that this reading is not only possible, but that it is correct. *See Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.*, 598 F.2d 945 (5th Cir.1979); *Director, Office of Workers' Compensation Programs v. Leckie Smokeless Coal Co.*, 598 F.2d 881 (4th Cir. 1979); *Director, Office of Workers' Compensation Programs v. South East Coal Co.*, 598 F.2d 1046 (6th Cir.1979); *Republic Steel Corp. v. U.S. Department of Labor*,

---

**5.** The same statute also provides for attorneys' fees when an employer admits some liability but contests the amount of compensation and the employee succeeds in obtaining a greater amount of compensation than the employer offered. *See* 33 U.S.C. § 928(b).

590 F.2d 77 (3d Cir.1978). As one court stated, "the fund stands in the shoes of the employer for the purposes of the attorneys' fees provision in 33 U.S.C. § 928(a)." *Black Diamond,* 598 F.2d at 953.

The position of the claimants, which the Benefits Review Board adopted, is that 33 U.S.C. § 928(a) requires that the Trust Fund be liable for attorneys' fees when the Director fails to act upon a claim for pre-1970 coal mine employment within thirty days of the claim being filed with the Director. That is, the Director receives "notice of a claim" within the meaning of § 928(a) immediately upon the miner's filing of the claim. If the Director does not grant an award of benefits within thirty days and the miner is thereafter determined to be entitled to benefits, the Trust Fund becomes liable for attorneys' fees.

The Director concedes that under some circumstances the Trust Fund is liable for a claimant's attorney's fees. It argues, however, that it is incorrect to start the thirty-day period on the day that it first receives the claim from a miner. This is so because a coal mine operator in a position comparable to that of the Trust Fund will not receive notice of a claim until after the Director, through a deputy commissioner, has collected and reviewed some medical evidence and made an initial determination as to liability. Moreover, since the initial and only administrative determination in these cases was that both claimants are entitled to benefits, the Director argues that it never "declined" to pay compensation, a prerequisite to attorneys' fees under 33 U.S.C. § 928(a).

### III.

That so much ink must be spilled before the issue can be cogently stated illustrates the complexity of the statutory scheme which we must interpret. Many courts which have grappled with procedural aspects of the Black Lung Benefits Act have concluded, to put it kindly, that the Act does not represent the work of Congress at its most lucid. *See Black Diamond,* 598 F.2d at 948 ("[t]he statutory tangle is intricate and exhibits some disregard for the usual rules of syntax, let alone clarity"); *South East Coal,* 598 F.2d at 1049 (Trust Fund is liable for attorneys' fees through an "extremely convoluted process"); *U.S. Pipe and Foundry Co. v. Webb,* 595 F.2d 264, 265, 273 n. 9 (5th Cir.1979) (referring to the "legislative morass" and the "clumsy drafting"); *Republic Steel,* 590 F.2d at 79 (referring to the "complexities of this convoluted process and the confusion it provokes"); *Director, Office of Workers' Compensation Programs v. Alabama By-Products Corp.,* 560 F.2d 710, 712, 720 (5th Cir.1977) (referring to the "labyrinthine statutory provisions" and the "statutory thicket" of the Act); *Krolick Contracting Corp v. Benefits Review Board,* 558 F.2d 685, 686 (3d Cir.1977) (referring to the "statutory muddle"); *Director, Office of Workers' Compensation Programs v. Peabody Coal Co.,* 554 F.2d 310, 313, 339 (7th Cir.1977) (referring to "statutory shambles" and "abysmally inept drafting").

Our quoting of these criticisms is not a mere idle expression of frustration. Rather, it explains, in part, our approach to this case. Although we rely on the "plain" language and the legislative history of the attorneys' fees provision in reaching our conclusion, we also find it highly appropriate to rely on the Secretary's regulations when construing a statutory scheme with such a byzantine structure. Thus, the fact that a completely literal reading of the procrustean incorporation accomplished by 30 U.S.C. § 932(a) would lead to some absurd results[6] indicates that Congress'

---

**6.** *Peabody Coal* contains the most exhaustive analysis of the relationship between the Black Lung Benefits Act and the L.H.W.C.A. In exploring the "labyrinthine pathways set up by the numerous statutory cross-references," *see* 554 F.2d at 326, Judge Pell noted several instances in which the incorporation accomplished by 30 U.S.C. § 932(a) makes little sense. Indeed, a close reading of the incorporation clause and the incorporated provisions of the L.H.W.C.A. uncovers an "incredible muddle of technical mistakes." *Id.* at 320. For example, Congress not only went to the trouble of specifically excluding from incorporation a provision that had

grant of authority to the Secretary of Labor to deviate from the provisions of the L.H.W.C.A.[7] must be read broadly.

### IV.

■ The attorneys' fees provision of the L.H.W.C.A. provides that fees may be awarded against an employer when it *"declines* to pay any compensation" after a certain period of time has elapsed. *See* 33 U.S.C. § 928(a) (emphasis added). The Director argues, correctly we believe, that attorneys' fees may not be awarded where, as here, the initial and only finding was that the claimants are entitled to benefits. Since the Director has never disputed the claimants' entitlement to benefits, it is hard to see how the Director can be said to have "declined" to pay benefits.

Cases construing 33 U.S.C. § 928(a) have generally stated that an employer's refusal to pay compensation is a prerequisite to an award of attorneys' fees, albeit without much discussion of what might constitute a refusal. *See, e.g., Savannah Machine & Shipyard Co. v. Director, Office of Workers' Compensation Programs,* 642 F.2d 887, 888–89 (5th Cir.1981); *Director, Office of Workers' Compensation Programs v. Robertson,* 625 F.2d 873, 878 (9th Cir.1980). But to the degree that the language of § 928(a), standing alone, indicates any re-

sult, it indicates that the Director's position is correct. To "decline," within the ordinary and plain meaning of that word, is to take some affirmative action indicating a refusal to engage in a requested activity or to reach a requested result.

The legislative history of § 928 strongly supports this reading of the word "declines." It indicates that attorneys' fees are to be awarded only where a dispute exists between the parties which renders their positions adversarial. The House Report to the 1972 amendments comments on the attorneys' fees provision as follows:

H.R. 12006 amends section 28 of the Act to authorize assessment of legal fees against employers in cases where the *existence or extent of liability is controverted* and the claimant succeeds in establishing liability or obtaining increased compensation in *formal proceedings or appeals.* Attorneys fees may only be awarded against the employer where the claimant succeeds, and the fees awarded are to be based on the amount by which the compensation payable is *increased as a result of litigation. Attorneys fees may not be assessed against employers (or carriers) in other cases.*

H.Rep. No. 1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong.

already been repealed, it also incorporated a provision which had been repealed. *See id.* It also incorporated a provision which is meaningless without reference to another provision which was not incorporated; this simply makes "no rational sense." *See id.* at 320–21 & n. 14. Additionally, Congress incorporated 33 U.S.C. § 918(b), which allows the Secretary of Labor to sue as a subrogee to recover from a defaulting employer the amounts the Secretary has paid to a claimant out of the special fund established in 33 U.S.C. § 944. The incorporated provision makes an employer "liable for payment into such fund." *See* 33 U.S.C. § 918(b). The provision which establishes and regulates the fund, however, 33 U.S.C. § 944, is not incorporated and its sole purpose is thus to pay benefits to claimants under the L.H.W.C.A. Thus, if the incorporation is read literally, 33 U.S.C. § 918 allows the Secretary to sue a defaulting coal mine operator to recover black lung benefits the Secretary has paid and to require the proceeds of the suit to go into a fund which pays benefits only to longshoremen.

Apart from the fact that funding L.H.W.C.A. claims from coal mine operators makes "no sense at all," *see* 554 F.2d at 328, other provisions in the Black Lung Benefits Act specifically address the same problem. *See id.* at 327–79. Thus, the incorporation of 33 U.S.C. § 918(b) is not only illogical, but unnecessary as well. We also note one other oddity not mentioned in *Peabody Coal.* One incorporated provision is 33 U.S.C. § 905(a), which states that the L.H.W.C.A. provides an exclusive remedy. An exception is made for cases in which the employer "fails to secure payment of compensation." In such cases, the claimant may sue the employer "in admiralty for damages." Thus, a strictly literal reading of the incorporation clause and of 33 U.S.C. § 905(a) leads to the truly remarkable conclusion that Congress intended to enable coal miners to sue coal mine operators in admiralty.

7. The specific grants of authority are discussed *infra.*

& Ad.News 4698, 4706. Not only does the House Report expressly require that liability be "controverted," it indicates that attorneys' fees are to be awarded only for work done in "formal proceedings," such as in "litigation." Thus, the legislative history supports a reading of the language of § 928(a) which would require that an employer, or in this case the Trust Fund, take some affirmative action which would put it in an adversarial position against the claimant for the attorneys' fees provision to be triggered.

Other provisions of § 928 support this conclusion. First, the fact that an employer is liable to pay only for the services of "an attorney at law" and not for a lay representative, see 33 U.S.C. § 928(a), indicates that Congress intended that employers would reimburse . claimants only for those costs incurred in an adjudicative setting. Second, 33 U.S.C. § 928(d) provides that where an employer is liable for attorneys' fees, it also may be liable for witness fees. Since witness fees can arise only in an adjudicative proceeding and not during a preliminary, evidence-gathering administrative period, this further indicates that Congress intended claimants to be reimbursed for adjudicative, rather than administrative, costs.

Accordingly, we conclude that the language of § 928 and its legislative history indicate that the mere filing of a claim with the Director and his inaction on that claim do not constitute a declination by the Director such as to trigger the thirty-day period for attorneys' fees in 33 U.S.C. § 928.[8]

### V.

The applicable regulations also support the Director's position. We begin by noting that 30 U.S.C. § 932(a) gives the Secretary of Labor an unusually broad grant of authority to regulate. Indeed, this statute contains three distinct grants of authority. First, § 932(a) provides that specified portions of the L.H.W.C.A. are applicable "except as otherwise provided ... by regulations of the Secretary." Second, references in the L.H.W.C.A. to employers are to be taken as references to the Trust Fund only "as the Secretary considers appropriate." Third, in a somewhat confusing grant of authority,

> The Secretary is authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part and thereafter those provisions shall be applicable to such operator.

See 30 U.S.C. § 932(a).[9]

The legislative history indicates that Congress intended to allow the Secretary "adequate flexibility" in administering the program. See 115 Cong.Rec. 39,996 (1969). The intent of Congress was that the specified portions of the L.H.W.C.A. were to apply only "to the extent the Secretary determines them applicable." Id. Accordingly, one court has stated that the authorization given the Secretary "discloses congressional intention to empower the Secretary to depart from specific requirements of the Longshoremen's Act in order to administer the black lung compensation pro-

---

8. As noted above, an earlier line of cases established the general principal that the Trust Fund could be held liable for attorneys' fees under 33 . U.S.C. § 928(a). In several of these cases, the Director argued, much as he does here, that because he had never contested the claim he could not be held liable for attorneys' fees under § 928(a). Although these cases rejected this argument, they did so because a coal mine operator had contested liability. Thus, these cases establish as a sufficient ground for attorneys' fee liability under § 928(a) that *someone* contests liability. *See Black Diamond,* 598 F.2d at 952–53; *South East Coal,* 598 F.2d at 1049 n. 1.

The present situation is thus distinguishable, since *no one* has ever denied that Hill and Bivens were entitled to benefits.

9. Eliminating the double negative, this clause empowers the Secretary to issue regulations consistent with the excluded provisions of the L.H.W.C.A.—that is, with those provisions which Congress specifically said are *not* to apply to Part C claims. *See generally Peabody Coal,* 554 F.2d at 321 & n. 15 (discussing unusual nature of this grant of authority).

gram properly." *See Director, Office of Workers' Compensation Programs v. National Mines Corp.*, 554 F.2d 1267, 1274 (4th Cir.1977).

The regulation governing attorneys' fees in black lung cases tracks the language of 33 U.S.C. § 928(a) almost exactly, with one important exception. Under the statute, the thirty-day period is triggered by the employer receiving "notice of a claim." *See* 33 U.S.C. § 928(a). In contrast, the regulation provides that the thirty-day period is triggered by a coal mine operator's receipt of "notice of its *liability*." *See* 20 C.F.R. § 725.367(a) (1984).

■ Plainly, the mere receipt of notice of a claim from a miner is not a "notice of liability." Before the Trust Fund can be liable in cases such as this one, it must be determined both that the miner has not worked in a coal mine after the end of 1969 and that he is disabled due to pneumoconiosis within the meaning of the Act. Similarly, a coal mine operator cannot be held liable until some determination has been made both that the miner was formerly employed by the operator and that he is disabled. Accordingly, for both the Trust Fund and for a coal mine operator the mere filing of a claim by a miner without any initial finding or preliminary determination of disability does not constitute a "notice of its liability." [10]

Functional differences between the L.H.W.C.A. and the Black Lung Benefits Act provide a logical basis for the Secretary's decision to deviate from the precise language of 33 U.S.C. § 928(a). Claims under the L.H.W.C.A. generally deal with traumatic injuries or deaths due to industrial accidents. Moreover, 33 U.S.C. § 912 requires a claimant to give notice to an employer within thirty days of the injury or death. In contrast, the Black Lung Benefits Act provides compensation for disability based on an invisible and progressive disease and, since § 912 is not among the incorporated provisions, a miner is not required to give his employer notice. Thus, under the L.H.W.C.A. an employer is likely to know the circumstances of the claim, and even if he does not the claimant is required to give him notice. Since pneumoconiosis, unlike an industrial accident, leaves no outward signs and since black lung claimants are not required to give their operators notice of a claimed disability, a coal mine operator is much less likely to have any independent knowledge of the circumstances of the claim at the time it is filed. In short, we believe the Secretary acted within its broad grant of authority to deviate from the provisions of the L.H.W.C.A. when it substituted "notice of its liability" for "notice of a claim" in 20 C.F.R. § 725.367(a).[11]

## VI.

In conclusion, the language of the relevant statutes, the legislative history and the Secretary's regulations indicate that the Trust Fund is not liable for attorneys' fees under the circumstances presented in

---

10. Under 20 C.F.R. § 725.412 (1984), a deputy commissioner is to identify and give notice to a coal mine operator which "may be liable" for benefits as a former employer of the miner. An operator receiving notice from a deputy commissioner is required to respond within thirty days under 20 C.F.R. § 725.413 (1984). Significantly, § 725.413 contemplates notice either before or after an initial finding of disability:

> If notice is given to the operator after initial findings have been made, the operator shall indicate its agreement or disagreement with each such finding. If notice is given to the operator before initial findings have been made, the operator shall indicate agreement or disagreement with the operator's identification as a potentially liable coal mine operator.

20 C.F.R. § 725.413(a) (1984). Since an operator, in cases where the notice precedes an initial finding, need only respond as to whether it is "potentially liable," *i.e.* it need only state a position on its employment relationship with the claimant, such a notice is not a "notice of its liability." Thus, the Secretary's regulations properly place operators and the Trust Fund in approximately the same position.

11. *Cf. Webb*, 595 F.2d at 272–74 (upholding Secretary's deviation from the incorporated 33 U.S.C. § 919(b), which requires that an employer be given notice that a claim has been filed within ten days after the claim is filed with a deputy commissioner).

these cases.[12] Accordingly, the orders of the Benefits Review Board imposing attorneys' fees against the Trust Fund are VACATED and the cases are REMANDED for further proceedings consistent with this opinion.

12. We are aware that our holding conflicts with *Director, Office of Workers' Compensation Programs v. Simmons,* 706 F.2d 481 (4th Cir.1983). We respectfully choose not to follow *Simmons* because it addressed neither the meaning of the word "declines" nor the relevant regulations.