**B & S COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 93–3665.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1994.

Decided Sept. 19, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 1, 1994.

Mark E. Solomons (argued and briefed), William E. Berlin, Arter & Hadden, Washington, DC, for petitioners.

Deborah E. Mayer (argued and briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondent.

Before: GUY and BOGGS, Circuit Judges; and CLELAND, District Judge.*

PER CURIAM.

Petitioners, a coal mine operator and its insurer, appeal the decision of the Department of Labor's Benefits Review Board affirming an administrative law judge's determination that neither the Board nor an ALJ has jurisdiction to consider a challenge to the Department's method of calculating interest due on unpaid reimbursements of monies paid on behalf of coal operators by the Black Lung Disability Trust Fund (Trust Fund). For the following reasons, we affirm.

## I.

Although we are presented in this appeal with a pure question of law, a brief discussion of the facts and the relevant regulatory framework is necessary to bring this controversy into sharper focus.

### A. REGULATORY FRAMEWORK

"As originally enacted, Title IV of the Federal Coal Mine Health and Safety Act of 1969 established two programs—Part B and Part C—under which coal miners totally disabled by work-related pneumoconiosis (black lung disease) could receive benefits." *USX Corp. v. Director, OWCP,* 978 F.2d 656, 657 n. 1 (11th Cir.1992).

> The scheme of the 1969 Act was to provide a brief period of federal aid to miners under Part B and eventually to transfer responsibility for benefits to state workmen's compensation programs. Thus, under Part C, claims submitted after December 31, 1973 are to be "filed pursuant to the applicable State workmen's compensation law." *See* 30 U.S.C. § 931(a). If no state workmen's compensation law provides adequate coverage, as determined by the Secretary of Labor, *see* 30 U.S.C. § 931(b), then a miner may proceed under the provisions of Part C.

*Director, OWCP v. Bivens,* 757 F.2d 781, 783 (6th Cir.1985) (footnote omitted).

In *Pyro Mining Co. v. Slaton,* 879 F.2d 187, 189–90 (6th Cir.1989), we discussed the adjudicatory and review procedures applicable to claims brought under Part C:

> At the direction of Congress, claims for benefits under the Black Lung Benefits Act are processed according to the proce-

---

* Honorable Robert H. Cleland, United States District Court for the Eastern District of Michigan, sitting by designation.

dures delineated in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (Longshore Act), except as otherwise provided by regulations of the Secretary of Labor. 30 U.S.C. § 932(a); *Saginaw Mining Co. v. Mazzulli,* 818 F.2d 1278, 1279 (6th Cir.1987). The claims procedure is set forth in Section 19 of the Longshore Act, 33 U.S.C. § 919. A claim is filed with the [district director] who has "full power and authority to hear and determine all questions in respect of such claim." § 919(a). Upon the application of any interested party, however, the [district director] must order a hearing, which is to be conducted by an administrative law judge. § 919(c) and (d). Thus, according to statute, the petitioners have a right to a hearing before an administrative law judge on all questions in respect of a claim.

Similarly, the regulations promulgated by the Secretary of Labor clearly provide the petitioners with a right to a hearing before an administrative law judge. Section 725.450 states that "any party to a claim ... shall have a right to a hearing concerning any contested issue of fact or law unresolved by the [district director]." 20 C.F.R. § 725.450 (1988). In addition, Section 725.451 provides that, after the completion of proceedings before the [district director], any party may request a hearing "on any contested issue of fact or law." If such a hearing is requested, then "the claim shall be referred to the Chief Administrative Law Judge for a hearing." 20 C.F.R. § 725.451 (1988). Section 725.-455 discusses hearing procedures. According to this section, the purpose of a hearing "shall be to resolve contested issues of fact or law."

A party may appeal an ALJ's ruling to the Benefits Review Board. *See* 33 U.S.C. § 921(b)(3) ("The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof.").

■ Although parties are generally required to exhaust their administrative remedies before seeking review by a federal court of appeals, *see* 33 U.S.C. § 921(c), the Black Lung Benefits Act (BLBA) does call for federal district court jurisdiction

in two very narrow situations involving enforcement of compensation orders:

If an operator fails to pay an award of disability benefits for which he is liable, the successful claimant or the Secretary may bring an action in district court to enforce the order. *See* 33 U.S.C. § 921(d). Moreover, the Secretary may bring an action to enforce a lien against an operator who fails to make payments to the Black Lung Disability Trust Fund. 30 U.S.C. § 934(b)(4)(A). *See also* 33 U.S.C. § 918 (collection of defaulted payments).

*Louisville & Nashville R.R. v. Donovan,* 713 F.2d 1243, 1247 (6th Cir.1983) (quoting *Compensation Dep't of Dist. Five, United Mine Workers of America v. Marshall,* 667 F.2d 336, 339 n. 6 (3d Cir.1981)), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

## B. FACTUAL BACKGROUND

In 1978, after having successfully sought disability benefits on account of his work-related pneumoconiosis, James Sumner, a former coal miner employed by B & S Coal Company, filed a claim with the Department of Labor (DOL) for medical benefits under Part C of the BLBA. Although the DOL approved Sumner's claim, B & S's insurer, Old Republic Insurance Company, disputed the agency's assignment of liability and refused to pay $1,346.40 in medical expenses billed as being attributable to Sumner's illness, pending its receipt of documentation verifying the costs assessed in the order. While this dispute was being resolved, the DOL paid Sumner's expenses out of the Trust Fund.[1]

1. As we have previously explained:

Until 1978, the Secretary of Labor assumed responsibility, out of funds appropriated from general revenues by Congress, for paying benefits when the responsible coal mine operator either could not be identified or failed to pay benefits. With the Black Lung Benefits Revenue Act of 1977, Congress acted to end all

In September 1986, a district director with the DOL's Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, found against B & S and Old Republic (referred to collectively as petitioners) and ordered them to reimburse the Trust Fund for the $1,346.40 that the DOL already had drawn from the fund in connection with Sumner's case. Petitioners (or more precisely, Old Republic) complied with the order in December 1988.

As it turned out, however, petitioners' payment did not put an end to this matter. In May 1989, the district director presented petitioners with an additional request for reimbursement, this time to recover the sum of $603.98, i.e., the "amount represent[ing] simple interest per annum (sliding) on each unpaid medical treatment bill from the date the bill was paid (or, if the bill was paid prior to the date of the initial determination, from the date that the initial determination became final)."[2] (App. 37.) Again, petitioners balked, "noting that [Old Republic] did not refuse to pay the principal amount 'after proper notice was provided,' and thus owed no interest." (Petitioners' Brief at 19.)

The DOL then transferred the case to the Office of the Administrative Law Judges where it was joined with a separate case, *Bailey v. Island Creek Coal Co.*, 16 Black Lung Rep. (MB) 3–859 (Admin. Law Judge 1992), which itself consolidated numerous other analogous cases. The ALJ in *Bailey* subsequently dismissed the case, reasoning that the Office of the Administrative Law Judges lacked subject matter jurisdiction over controversies, such as the present one, arising out of section 424 of the BLBA, 30 U.S.C. § 934. The operators in *Bailey* appealed this decision to the Board, but their appeal was stayed pending the outcome of *Brown v. Sea B. Mining Co.*, 17 Black Lung Rep. (MB) 1–115 (Ben. Rev. Bd.1993) (en banc).

*Brown* consolidated several other cases that, like *Bailey*, involved interest assessments on Trust Fund reimbursements for medical benefits.[3] And, as had the ALJ in *Bailey*, the Board in *Brown* ultimately dismissed the case for lack of subject matter jurisdiction. In light of *Brown*, the cases that had been held in abeyance in *Bailey*, including petitioners' case, also were dismissed. This appeal followed.

## II.

At the outset, it is important to define precisely what is at stake. In this appeal, we do not pass on the validity or legality of the DOL's method of calculating interest on reimbursements into the Trust Fund, or of the correctness of its assessment of interest in any particular case; instead, we consider the preliminary question of whether the administrative review process or a federal district

---

federal financial responsibility for disabled miners' benefits under Part C. It accomplished this by establishing the Black Lung Disability Trust Fund. Congress imposed a sales tax on coal sold by producers and placed the money generated thereby into the Trust Fund. The Trust Fund then pays Part C benefits where there is no operator liable for the benefits or where an operator who is liable refuses to pay. *Bivens*, 757 F.2d at 783 (citations omitted).

2. Title 30 U.S.C. § 934(b)(1) states in pertinent part:
 (b)(1) If—
 (A) an amount is paid out of the fund to an individual entitled to benefits under section 932 of this title, and
 (B) the Secretary determines, under the provisions of sections 932 and 933 of this title, that an operator was required to secure the payment of all or a portion of such benefits, then the operator is liable to the United States for repayment to the fund of the amount of such benefits the payment of which is properly attributed to him plus interest thereon.
*See also* 20 C.F.R. § 725.420(c). Petitioners observe that it has not always been the DOL's policy to tack interest on to operator reimbursements into the Trust Fund. Petitioners claim that the new policy, initiated in 1988, is of dubious legality because it authorizes the assessment of prejudgment interest; in their words, it "identifie[s] the date on which the medical bill was paid by the Fund, as the accrual date on which interest began to run. This accrual date usually predated any notice of the claim by many years." (Petitioners' Brief at 10.)

3. As the DOL points out, the parties involved in the instant case were allowed to file *amicus curiae* briefs in the *Brown* proceeding.

court represents the proper avenue through which to challenge such method. "The standard of review on the issue of subject matter jurisdiction is *de novo* review." *Greater Detroit Resource Recovery Auth. v. United States EPA,* 916 F.2d 317, 319 (6th Cir.1990).

In challenging the conclusion reached by the ALJ (and echoed by the Board), petitioners contend that the instant action presents no "final" order and that, accordingly, section 424(b) of the BLBA, 30 U.S.C. § 934, cannot provide the basis for federal district court jurisdiction.[4] Pursuant to 30 U.S.C. § 934(b)(2):

> If any operator liable to the fund under paragraph (1) refuses to pay, after demand, the amount of such liability (including interest), then there shall be a lien in favor of the United States for such amount upon all property and rights to property, whether real or personal, belonging to such operator. The lien arises on the date on which such liability is finally determined, and continues until it is satisfied or becomes unenforceable by reason of lapse of time.

Title 30 U.S.C. § 934(b)(4)(A) provides that, in the event an operator refuses or neglects to pay its liability to the Trust Fund, "the Secretary may bring a civil action in a district court of the United States to enforce the lien...." Such liability "may be collected at a proceeding in court if the proceeding is commenced within 6 years after the date on which the liability was *finally determined* ...." *Id.* § 934(b)(4)(B) (emphasis added). To summarize, a lien attaches on an operator's property by operation of law when: (1) a final determination has been made as to the operator's liability to the Trust Fund; (2) a demand for payment has been made; (3) and such demand has been refused. It is only at this point (after the operator's refusal) that the Secretary can resort to federal district court in an effort to enforce the lien.

Petitioners do not take issue with steps (2) and (3) of the above sequence, at least as they are applied here. Rather, they contend that the instant claim for benefits is not "final"—and that therefore the jurisdictional provision of section 424(b) has not been triggered—because the parties' dispute over the amount of interest owed has yet to be conclusively settled. From petitioners' perspective, then, a claim can be deemed final only upon the ultimate determination of the *total* amount of the award (interest included), not upon the operator's and/or insurer's mere assumption of liability and payment of the principal.

Petitioners further maintain that, as a matter of sound policy, the result reached by the ALJ makes little sense. Petitioners characterize the DOL's medical benefit program as "notoriously incompetent" and add that disputes over medical bills paid out of the Trust Fund for which reimbursement is sought are "quite common." Providing a federal forum to adjudicate such disputes, petitioners claim, "would unnecessarily burden the district courts with substantive litigation over the coverage of medical bills and the like for the foreseeable future." (Petitioners' Brief at 41.)

 We do not write on a clean slate. Notwithstanding petitioners' contention to the contrary, we hold that we are bound by our recent decision in *Youghiogheny & Ohio Coal Co. v. Vahalik,* 970 F.2d 161 (6th Cir. 1992); *see id.* at 163 ("Jurisdiction over the reimbursement of principal and interest upon interim payments by the fund is thus clearly vested in the district courts."). Consistent with *Vahalik,* we conclude that the district court is the proper forum in which to contest the DOL's method of calculating interest on operator reimbursements into the Trust

---

4. Petitioners assert (and the DOL agrees) that the ALJ erred by premising federal district court jurisdiction, in part, on section 21(d) of the Longshore Act, 33 U.S.C. § 921(d). Section 21(d) permits a beneficiary of a final compensation award or the district director to enforce the

award by obtaining an injunction in federal district court. Both parties submit that this section is inapplicable to this case because it authorizes injunctive relief only in the event that the operator has failed to begin payments. Here, of

Fund.[5]

**AFFIRMED.**

course, the quarrel is over interest on benefits that already have been paid.

5. We also note that at least three other federal circuit courts recently had occasion to consider the precise jurisdictional issue presented in this appeal. *See Bethenergy Mines, Inc. v. Director, OWCP,* 31 F.3d 522 (3d Cir.1994); *Sea B. Mining v. Director, OWCP,* No. 93–1784 (4th Cir.) (argued Apr. 12, 1994); *Peabody Coal Co. v. Di-*

*rector, OWCP,* No. 93–2597 (7th Cir.) (argued Feb. 23, 1994).

In *Bethenergy,* the Third Circuit, citing *Vahalik,* concluded that the district courts provide the proper forum to challenge the method of calculating interest on operator reimbursements into the Trust Fund. As of this time, neither the Fourth Circuit nor the Seventh Circuit has issued an opinion in *Sea B. Mining* and *Peabody Coal,* respectively.