DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Lennis SIMMONS, Respondent.

No. 82–1233.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1982.

Decided May 4, 1983.

Rehearing Denied June 30, 1983.

David V. Bernal, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Asst. Counsel for Black Lung Benefits, Washington, D.C., William M. Heffernan, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., on brief), for petitioner.

Sanford A. Meizlish, Columbus, Ohio (Barkan & Neff Co., L.P.A., Columbus, Ohio, on brief), for respondent.

Before WIDENER and SPROUSE, Circuit Judges, and GORDON,* District Judge.

SPROUSE, Circuit Judge:

The Director of the Office of Workers' Compensation Programs, United States Department of Labor (the Director), appeals from the decision of the Benefits Review Board holding the Black Lung Disability Trust Fund[1] (Trust Fund) liable for the attorney fees incurred by black lung claimant Lennis Simmons. The Benefits Review Board held that the Trust Fund was liable for the attorney fees under 30 U.S.C. § 932(a) because the Director delayed in

---

* Hon. Eugene A. Gordon, Chief Judge for the United States District Court for the Middle District of North Carolina, sitting by designation.

1. 26 U.S.C. § 9501 (Supp. V 1981).

ordering payment of Simmons' disability claim for a period exceeding 30 days after the Director had received Simmons' claim. We agree and affirm.

Lennis Simmons worked in the underground coal mines of West Virginia between the years of 1942 and 1969. In 1970, he applied for black lung benefits with the Social Security Administration under Title IV of the Federal Coal Mine Health and Safety Act of 1969 (the 1969 Act).[2] The Social Security Administration denied Simmons' claim on February 4, 1976.

In 1977, Congress substantially amended Title IV of the 1969 Act.[3] The amendments transferred to the Trust Fund all responsibility for payment of black lung benefits in cases where the entitled miner's last coal mine employment predated January 1, 1970.[4] The Act also provided that all miners whose Part B claims had been previously denied could elect review of their claims by either the Social Security Administration or the Department of Labor.[5]

Pursuant to this amended statutory scheme, Simmons elected review of his claim by the Department of Labor on June 19, 1978. The Department proceeded to conduct a medical examination and tests on Simmons. On November 15, 1979, Simmons retained counsel to represent him in pursuit of his claim for black lung benefits. On March 27, 1980, twenty-one months after Simmons had filed his review request, the Department awarded Simmons benefits. Since Simmons' last coal mine employment terminated prior to January 1, 1970, the Department assessed liability for payment of the benefits against the Black Lung Disability Trust Fund. The subsequent petition by Simmons' attorney for fees was granted in reduced amount and assessed against Simmons' award. The Benefits Review Board, on an appeal by Simmons, sustained the reduction in amount but assessed the attorney fees against the Trust Fund. It is from this latter ruling that the Director appeals to this court.

There is no specific reference to attorney fees in either Title IV of the 1969 Act or in the 1977 Amendments to the Act. The Act incorporates by reference, however, section 28(a) of the Longshoremen's and Harbor Workers' Compensation Act,[6] which provides that an "employer" is responsible for attorney fees as well as benefit payments if it has either contested the claim by denying liability or refused to pay the claim within thirty days "after receiving written notice" that the claim has been filed.[7]

After the 1977 Amendments to the Act, the Director initially took the position that the provisions of 30 U.S.C. § 932(a) applied only to coal mine employers—that

---

**2.** 30 U.S.C. §§ 901 *et seq.* The Social Security Administration administers claims filed prior to July 1, 1973 ("Part B" claims). 30 U.S.C. § 921. The Office of Workers' Compensation Programs administers claims filed between July 1, 1973 and December 31, 1973, 30 U.S.C. § 925; and claims filed after December 31, 1973 ("Part C" claims), 30 U.S.C. § 931.

**3.** The Amendments were enacted in two parts, the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95, and the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11.

**4.** 30 U.S.C. § 934(a)(2), (6).

**5.** 30 U.S.C. § 945(a)(1).

**6.** 30 U.S.C. § 932(a), incorporating 33 U.S.C. § 928(a).

**7.** 33 U.S.C. § 928(a). Another condition of this liability is that the claimant must have subsequently secured the services of an attorney and prevailed on his claim. 33 U.S.C. § 928(a) provides:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

the Trust Fund was never liable for attorney fees incurred by a claimant even if black lung benefits were for pre-1970 employment and were paid by the Trust Fund.[8] It is now well settled, however, that where the Trust Fund is the source of payments of black lung benefits, it is liable for the payment of attorney fees to a claimant in those instances where a coal mine employer would have been liable under previous versions of the statute. The Trust Fund is liable for attorney fees in these instances primarily due to the language in section 932(a), which provides in part:

> [T]he provisions of the [Longshoremen's Act] ... shall (except as otherwise provided in this subsection or by regulations of the Secretary *and except that references in [the Longshoremen's Act] to the employer shall be considered to refer to the trustees of the fund,* as the Secretary considers appropriate and as is consistent with the provisions of section 9501(d) of Title 26), be applicable....

30 U.S.C. § 932(a) (emphasis added). Congress intended by this language that the Trust Fund should be liable for attorney fees in the same manner that a coal mine employer is liable for attorney fees, i.e., in those instances detailed in 33 U.S.C. § 928(a). *Director, Office of Workers' Compensation Programs v. Leckie Smokeless Coal Co.,* 598 F.2d 881 (4th Cir.1979); *Director, Office of Workers' Compensation Programs v. South East Coal Co.,* 598 F.2d 1046 (6th Cir.1979); *Director, Office of Workers' Compensation Programs v. Black Diamond Coal Mining Co.,* 598 F.2d 945 (5th Cir.1979); *Republic Steel Corp. v. United States Dep't of Labor,* 590 F.2d 77 (3d Cir. 1978).

■ The sole issue for our determination, then, is the meaning of the phrase, "after receiving written notice," in section 928(a). The meaning is plain as it relates to an actual coal mine employer. In cases where such an employer is or was liable for benefit payments, it is notified by the Department of Labor in writing of its responsibility to pay benefits. There is no question that the

phrase "thirty days after receiving written notice of a claim" means thirty days after that written notice is received by the employer from the Department of Labor. Applying this plain meaning to the Trust Fund, it could be liable for attorney fees thirty days after the Department of Labor receives written notice of the Trust Fund's potential liability for black lung benefits.

The Director argues, however, that this simple interpretative process is complicated when the Trust Fund is transposed to the role of a fictional "employer" in compliance with the mandate of section 932(a). This is so, he argues, because an actual employer first receives notice of liability from the Director—after the Director has conducted a review of the claim, including medical examinations and tests on the claimant. 20 C.F.R. §§ 725.405, −.406, −.407(a), (b), −.410(b), −.412. It is this written notice that commences the thirty day period in which an actual employer must pay the miner benefits, else incur additional liability for attorney fees. The Director argues that to be treated equally he cannot be deemed to have received notice until after he has completed the same investigation. In effect, he argues, he should be permitted to notify himself after the completion of requisite administrative responsibilities before the thirty day period of section 928(a) can be computed against him. In the case *sub judice,* that would have been one year and nine months after the Director actually received notice by Simmons' filing for review of his claim.

■ Apart from the clumsiness of interpreting a statute so that an official must give notice to himself, the fallacy of the Director's argument is that an actual employer's first written notice is the notice from the Director, whereas the Director's first written notice is from the claimant when he files a claim. There is simply no way to reduce the notice requirement to a common denominator so that an equal time frame can be with fairness applied to an actual employer and to the Trust Fund in

---

**8.** *See* Comment (f) to § 725.367, 43 Fed.Reg. 36,789 (1978).

its payment role as an employer. We think the better rule governing cases where there is no post-1969 coal mine employment is that adopted by the Benefits Review Board in *Yokley v. Director, Office of Workers' Compensation Programs,* 3 Black Lung Rep. 1–230 (1981); and *Belcher v. Director, Office of Workers' Compensation Programs,* 3 Black Lung Rep. 1–250 (1981). The Board held that the Trust Fund receives notice when a claim is filed directly with the Department of Labor. In those cases where the claim was initially filed with the Social Security Administration, the Trust Fund is held to receive notice when the Labor Department received the referral of the claim from the Social Security Administration after the miner's "election" to have it reviewed by the Labor Department. We adopt this rule.

The Director argues that to avoid paying attorney fees, he would under this interpretation in many cases be required to decide whether to pay the claim before he has had an opportunity to develop all of the medical evidence he might need to make the best informed decision. That is true. It is also true that an actual employer faces the same problem. In the latter's case, the Director presumably would have developed medical evidence, but in the event the employer disbelieves that evidence, or wishes to contest the evidence, the employer must yet make its decision within thirty days of initial notice to it of its liability. Congress clearly recognized this burden on the employer by the language of section 928(a), but also recognized the potential obligation for attorney fees that claimants might incur if disposition of their claims was delayed. In balancing the employer/claimant rights, Congress then placed claimant's attorney fee obligation occasioned by any such delay on the employer.

The ultimate question presented in this appeal is a close one. The language of the applicable statutes in necessary juxtaposition is confusing and there is no legislative history on the precise point. The courts in *Leckie Smokeless Coal, Southeast Coal Co., Black Diamond,* and *Republic Steel* were influenced by Congress' overriding purpose

in preserving a claimant's award. In *Republic Steel,* for example, the Third Circuit said:

> We have even greater difficulty in believing, on the other hand, that Congress intended to place the burden on the claimants. Such an interpretation of the Act is completely incongruous with its purpose and policy and would require us to assume that Congress intended to impose upon pre-1970 employment claimants a burden that had not existed previously. Our review of the Act in general and its legislative history, although not explicit on this point, convinces us that Congress intended that the pre-1970 employment claimants should not be deprived of part of their benefits.

590 F.2d at 81 (footnote omitted).

We are impressed with that same legislative philosophy. It is true that requiring the Department—at the risk of paying attorney fees—to act on a claim within thirty days after it is filed, requires the Department to respond more quickly than if there had been a responsible employer liable for the claim. The potential delay that might result from a contrary holding, however, is demonstrated by the procedural history of this case. If the Director's argument had prevailed, the congressionally mandated thirty-day period would not have started until one year and nine months after the Department received notice of the claim. As the Director argues, that period was not necessarily longer than it would have been if an actual employer had been liable. The Director's role in the present case, however, differs in one essential aspect from his role in passing on an employer's liability as a payor. The essential difference is that here the Director is determining his own agency's liability as a payor—i.e., whether the Department must pay benefits to a miner from the Trust Fund.

Since the Director can determine his own administrative schedule, accepting the Director's argument in this case would give him absolute discretion to decide when the Department would be liable for attorney

fees to a claimant. This could result in a complete erosion of 33 U.S.C. § 928(a), or at least create an impermissible conflict. It could potentially burden the claimant by a much greater delay than is possible where an actual employer is liable. We can only assume that Congress balanced the effects of this kind of delay—the claimant's hardships against the inconvenience to the Director—when it incorporated section 928(a) into the black lung scheme. As in *Republic Steel,* here it would be "completely incongruous with [the Act's] purpose and policy" to place the burden of attorney fees upon the claimant.

AFFIRMED.