**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Petitioner,**

**v.**

**Mason POYNER, Claimant-Respondent.**

**No. 85–3794.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1986.

Decided Jan. 22, 1987.

Marta Kusic, U.S. Dept. of Labor, Washington, D.C., Jeffrey J. Bernstein (argued), for petitioner.

Ronald K. Bruce (argued), Monhollon, Bruce, & Kelley, Madisonville, Ky., for claimant-respondent.

Before ENGEL, JONES and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The Benefits Review Board of the United States Department of Labor assessed attorney fees of $975.00 against the Black Lung Disability Trust Fund in connection with a retired coal miner's claim for black lung benefits. The claim, initially filed in 1970, had been denied by the Department of Health, Education and Welfare both before and after enactment of the Black Lung Benefits Reform Act of 1977, but HEW ultimately referred the claim to the Department of Labor, pursuant to 30 U.S.C. § 945(a)(2)(B)(i), for *de novo* disposition by that Department under Part C of the Black Lung Benefits Act. The Department of Labor's Office of Workers' Compensation Programs thereafter awarded benefits from the Trust Fund, but concluded that the claimant would have to bear his own legal expenses. On appeal to the Benefits Review Board, the Board held the Trust Fund liable for the reasonable cost of legal work performed for the claimant after December of 1978, the Board apparently having thought that the claim was referred to the Labor Department on December 1, 1978. The Office of Workers' Compensation Programs has petitioned for review of the attorney fee award, contending that the award conflicts with *Director, Office of Workers' Compensation Programs v. Bivens,* 757 F.2d 781 (6th Cir.1985). We agree with the petitioner's reading of *Bivens,* and we shall therefore reverse the Board's award of attorney fees.

As explained in *Bivens,* black lung claims filed before December 31, 1973, came within the purview of the Department of Health, Education and Welfare (now Health and Human Services) under Part B of the Black Lung Benefits Act, 30 U.S.C. §§ 921–925. Such claims, if allowed, were paid directly by the federal government. Part C (30 U.S.C. §§ 931–945) provides that claims filed after December 31, 1973, are to be filed pursuant to state workers' compensation laws, if applicable. Where adequate coverage is not available under state law, Part C (which is administered by the Department of Labor) makes coal mine operators in that state subject to certain provisions of the workers' compensation scheme established by the federal Longshore & Harbor Workers' Compensation Act. Although individual coal mine operators or their insurance carriers are generally responsible for paying meritorious Part C claims, that responsibility does not extend to claims filed by people who have not worked in coal mines since December 31, 1969. Such claimants, like those whose employers are uncollectible or not identifiable, are paid from the Black Lung Disability Trust Fund; the monies in that fund come from a federal sales tax on coal.

The claimants in *Bivens* had not worked in a coal mine after 1969, and their claims (filed in the first instance with the Department of Labor under Part C of the Act) were found to be payable out of the Trust Fund. The claimants, or their attorneys, sought to recover attorney fees from the Fund too, relying on the following provision of the Longshore & Harbor Workers' Compensation Act:

"If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded ... a reasonable attorney's fee against the employer or carrier...." 33 U.S.C. § 928(a).

This provision has been made generally applicable to coal mine operators, "except

as otherwise provided ... by regulations of the Secretary [of Labor] and except that references [in the statutory provision] to the employer shall be considered to refer to the trustees of the fund, as the Secretary considers appropriate...." 30 U.S.C. § 932(a). By regulation, the Secretary of Labor has provided, in effect, that the attorney fee provision of the Longshore & Harbor Workers' Act shall not be applicable in black lung cases insofar as it imposes liability for attorney fees when the employer (or the Fund) declines to pay compensation within thirty days after receiving notice of a "claim" for compensation. Instead, the regulation makes the coal mine operator (or the Fund, as the case may be) liable for a reasonable attorney fee if the operator (or Fund) "declines to pay any benefits on or before the 30th day after receiving written notice of its *liability* for a claim on the ground that there is no liability for benefits within the provisions of the Act...." 20 C.F.R. § 725.367(a) (emphasis supplied).

*Bivens* held that it was within the power of the Secretary of Labor to provide that the 30 day period would be triggered only by notice of "liability." *Bivens* further held that the mere filing of a Part C claim potentially payable out of the Trust Fund is not to be equated with a notice of "liability," absent a preliminary determination of disability, and does not start the running of the 30 day period. This holding conflicts with the decision in *Yokley v. Director*, 3 B.L.R. 1–230 (1979), where the Benefits Review Board concluded that the filing of a Part C claim by one who is known not to have worked in a mine after 1969 is a "notice of potential benefit liability" sufficient to start the 30 day clock running against the Trust Fund without regard to when evidence of the claimant's disability may be presented. *Yokley* does not represent the law in the Sixth Circuit, of course; *Bivens* does.

The factual situation in the case at bar differs in one respect from that in *Bivens*. There the claims were filed initially with the Secretary of Labor under Part C of the Black Lung Benefits Act; here the claim was filed initially with HEW under Part B of the Act. HEW repeatedly denied the claim prior to 1977, but after the Black Lung Benefits Reform Act was passed in that year HEW notified the claimant, as required by a newly enacted provision of the Black Lung Benefits Act, 30 U.S.C. § 945(a)(1), that he could elect to have his denied claim reviewed either by HEW or by the Secretary of Labor. The claimant chose the former option. That choice obligated HEW to review the evidence on file, taking into account the 1977 amendments, and either approve the claim and certify such approval to the Secretary of Labor as an initial determination of liability (30 U.S.C. § 945(a)(2)(A)) or, failing such approval, refer the claim to the Secretary of Labor for treatment as if it had been filed with the Secretary under Part C. (30 U.S.C. § 945(a)(2)(B).)

HEW did not, in this case, approve the claim and certify such approval to the Secretary of Labor under § 945(a)(2)(A) as an initial determination of liability. Instead, HEW referred the claim to Labor under § 945(a)(2)(B), notifying the claimant in February of 1979 that:

"We are still unable to approve your claim because you do not meet the requirements of the law.

\*　　\*　　\*　　\*　　\*　　\*

We are sending your file to the Department of Labor since they now have jurisdiction over your claim. The Department of Labor will review your claim and tell you what additional evidence or information is needed. They will then notify you of their decision on your claim."

On August 24, 1979, after receipt of the claimant's file from HEW, the Department of Labor sent the claimant a letter noting that the earnings record in his file indicated self-employment from 1962–68 and asking what this self-employment was and whether this was the last time the claimant had worked. The claimant was also asked, among other things, what the date of his last coal mine work was, and was requested to submit proof of coal mine work for

the period 1927–30. The claimant submitted satisfactory responses, through his lawyer, and on January 24, 1980, the claimant was awarded lump sum benefits of $22,287 for the period through December 31, 1979, plus $381 per month thereafter, such benefits to be paid from the Trust Fund.

In subsequent proceedings with respect to the claimant's attorney fees, the Benefits Review Board applied its decision in *Yokley* and held the Trust Fund liable for attorney fees incurred after the thirtieth day following the Department of Labor's receipt of "notice of the potential liability of the Trust Fund for claimant's benefits." Receipt of notice that the claim was being transferred from HEW was deemed to constitute such notice of "potential liability," and the Board sought to distinguish *Bivens* as having no application to claims filed originally with HEW and denied by that agency prior to referral to the Department of Labor.

In a footnote of the *Bivens* decision (757 F.2d at 787 n. 8), this court referred to a line of cases in which courts had rejected an argument that the Trust Fund could not be held liable for attorney fees where the Department of Labor had not actually contested the claim for benefits, but where the miner's last employer (who would have been liable for any benefits under the pre-1977 law) had contested liability. See *Director v. Black Diamond Coal Mining Co.*, 598 F.2d 945 (5th Cir.1979). Because no one had ever denied that the *Bivens* claimants were entitled to benefits, the footnote said, the situation presented in cases such as *Black Diamond* was distinguishable. The Board read this footnote as indicating that the holding in *Bivens* "was based on the premise that *someone* must contest liability at some point in the administrative process to justify attorney's fee liability. . . ." Someone—namely HEW—having contested liability in the case at bar, the Board found *Bivens* inapplicable.

We think the Board read more into the footnote than it should have done, while ignoring a highly significant aspect of *Bi-*

*vens'* actual holding. *Bivens* squarely held that the Department of Labor had authority to provide by regulation, as it did provide in 20 C.F.R. § 725.367(a), that the 30 day period after which attorney fees may be assessed "is triggered by a coal mine operator's receipt of 'notice of its liability.' " 757 F.2d at 788 (emphasis in original). As the court went on to say,

"Plainly, the mere receipt of notice of a claim from a miner is not a 'notice of liability.' Before the Trust Fund can be liable in cases such as this one, it must be determined both that the miner has not worked in a coal mine after the end of 1969 and that he is disabled due to pneumoconiosis within the meaning of the Act. Similarly, a coal mine operator cannot be held liable until some determination has been made both that the miner was formerly employed by the operator and that he is disabled. *Accordingly, for both the Trust Fund and for a coal mine operator the mere filing of a claim by a miner without any initial finding or preliminary determination of disability does not constitute a 'notice of its liability.' " 757 F.2d at 788 (emphasis supplied).

If the mere filing of a claim by a miner does not constitute a notice of liability, we are at a loss to understand how such notice can be given by the transfer of a claim by HEW with a preliminary finding of *non-liability.* The situation might well have been different if HEW had approved the claim and certified its approval to the Department of Labor "as an initial determination of eligibility" under 30 U.S.C. § 945(a)(2)(A), but HEW's transfer of the claim to Labor without approval no more constituted notice of "liability" than did the filing of the *Bivens* claims directly with Labor. Both the transfer in this case and the direct filing in *Bivens* constituted notice of *potential* liability, to be sure, but the regulation is not couched in terms of "potential" liability—and *Bivens* flatly rejects the argument (which was accepted in *Yokley* and in *Director v. Simmons,* 706 F.2d 481 (4th Cir.1983)) that notice of "po-

tential liability" is enough to start the 30 days running.

Citing a line of administrative decisions that began with *Belcher v. Director*, 3 BLR 1–250 (1981), the Board said in the instant case that "[w]hen .... claimant had no post–1969 employment, and a Part B claim was filed with and denied by [HEW], the Director has notice of liability on the date the claim is referred by [HEW] to the Department of Labor." *Belcher* and its progeny rest on the now discredited "potential liability" theory of *Yokley;* they offer no other rationale for treating the transfer of an unapproved claim as a notice of liability. If, as *Bivens* teaches, the filing of an unevaluated claim does not constitute a notice of liability, it does not seem to us that notice of liability is given by the transfer of a claim that has been evaluated by HEW and found wanting.

The petition for review is GRANTED, and the orders of the Board with respect to attorney fees are REVERSED insofar as they hold the Trust Fund liable for any part of the claimant's attorney fees.

NATHANIEL R. JONES, Circuit Judge, concurring separately.

Although I agree that *Director, Office of Workers' Compensation Programs v. Bivens*, 757 F.2d 781 (6th Cir.1985), compels our reversal of the Board's award of attorney's fees, I believe that *Bivens* was wrongly decided.

The Black Lung Disability Trust Fund must, in some circumstances, pay attorney's fees as if it were an employer of a claimant under the Black Lung Benefits Act. *Id.* at 785. Under the Act, an employer is liable for attorney's fees when

the employer or carrier declines to pay any compensation on or before the thirtieth day *after receiving written notice of a claim for compensation having been filed* from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the

services of an attorney at law in the successful prosecution of his claim....

33 U.S.C. § 928(a) (1982) (emphasis added). This court noted in *Bivens* that the regulations change the wording of the statute by requiring a "written notice of its *liability* " to be received by an employer. 757 F.2d at 788 (citing 20 C.F.R. § 725.367 (1986)) (emphasis in original). The court then held that such a notice of liability could not be sent until there had been an initial finding or preliminary determination of disability. *Id.* 788 However, the regulations governing the identification and notification of a responsible operator do not support this definition of a notice of liability:

Such notification shall include a copy of the claimant's claim form and a copy of all documentary evidence pertaining to the claim obtained by the deputy commissioner, *if any*, and the initial findings of the deputy commissioner, *if any*.

20 C.F.R. § 725.412(b) (1986) (emphasis added). Thus, a notice of liability can set forth either an employer's responsibility for any potential benefits to be awarded or an employer's responsibility for benefits already determined actually to be due.

Accordingly, the Fourth Circuit in *Director, Office Workers' Compensation Programs v. Simmons*, 706 F.2d 481 (4th Cir.1983), held that the Trust Fund receives its notice of liability when it receives notice of its "potential liability" for black lung benefits via the filing of a claim with the Department of Labor. *Id.* at 484–85. This interpretation of the Act and its regulations was the same as that adopted by the Benefits Review Board in *Yokley v. Director, Office of Workers' Compensation Programs*, 3 Black Lung Rep. 1–230 (1981), and *Belcher v. Director, Office of Workers' Compensation Programs*, 3 Black Lung Rep. 1–250 (1981).

While it may seem counterintuitive to hold that the Trust Fund's notice of its *potential* liability constitutes the notice of liability set forth in the regulations, such a definition of a notice of liability is more consistent with the wording of the attorney's fees statute than the definition given

in *Bivens.* If the word "liable" in the regulations means "subject to appropriation or attachment," Webster's Ninth New Collegiate Dictionary 687 (1986), the regulations' notice of liability appears to be very different from the notice of claim set forth in the statute. But if "liable" simply means "responsible," *id.,* then a notice of liability would be fairly similar to a notice of claim.

Furthermore, to require an initial determination of liability before the thirty days begin to run would allow the Director to delay assessment of a claim indefinitely, since no attorney's fees can be awarded *before* evaluation of the Department's liability for the claim. As the Fourth Circuit has noted, to allow the Director such "absolute discretion to decide when the Department would be liable for attorney fees to a claimant .... could result in a complete erosion of 33 U.S.C. § 928(a), or at least create an impermissible conflict. It could potentially burden the claimant by a much greater delay than is possible where an actual employer is liable." 706 F.2d at 485–86.

Altogether, the regulations' use of the term "notice of liability" is unfortunate since it leads legally trained minds to assume that the notice should include a finding that the employer or Trust Fund must pay the claimant. I believe that the language and purpose of the attorney's fees statute is better served by requiring only that the notice indicate that the employer or Trust Fund will be responsible *if* the claimant is entitled to benefits. Nevertheless, because this court must meet *en banc* to overrule a previous panel's decision, I must concur with the majority's conclusion since it is consistent with the *Bivens* panel's definition of a notice of liability.