**BETHENERGY MINES INC.,**
Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Frank R. Markovich, Respondents.**

No. 88–3021.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 24, 1988.

Decided Aug. 4, 1988.

John J. Bagnato, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for petitioner, Bethenergy Mines Inc.

Blair V. Pawlowski, Pawlowski, Creany & Tulowitzki, Ebensburg, Pa., for respondent, Frank R. Markovich.

George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Barbara J. Johnson, Counsel for Appellate Litigation, Richard A. Seid, Counsel for Administrative Litigation and Legal Advice, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for the Federal respondent.

Before GIBBONS, Chief Judge, HIGGINBOTHAM, Circuit Judge and ROTH, District Judge *.

OPINION OF THE COURT

GIBBONS, Chief Judge:

This petition for review of an order of the Benefits Review Board of the Department of Labor awarding attorneys fees presents two questions for decision. Both questions involve interpretation of 33 U.S.C. § 928 (1982) and its implementing regulation, 20 C.F.R. § 725.367 (1987). First, where a coal mine operator receives an initial determination by a deputy commissioner that a claimant is not eligible for Black Lung benefits, is informed that the claimant disputes this initial determination, and files a controversion of the claim, has the operator "decline[d] to pay benefits .. after receiving written notice of its liability for benefits"? Second, where the claimant hires an attorney and the operator withdraws its controversion prior to the hearing before an administrative law judge, has the claimant "utilized the services of an attorney in the successful prosecution of the claim"? We answer both questions in the affirmative, and, with one modification, will enforce the order of the Benefits Review Board.

I

Frank Markovich was a coal miner for almost forty years. In November of 1980, he applied for disability benefits under the Black Lung Benefits Act, 30 U.S.C. § 901–45. The Department of Labor in-

formed the Bethlehem Mines Corporation (now known as Bethenergy Mines, Inc.) in January of 1981 that Markovich had filed a claim, that the claim was under investigation, and that Bethenergy Mines had been identified as the putative responsible operator, that is, the operator who would be responsible for paying benefits if Markovich were found eligible for benefits. The Department asked Bethenergy Mines to indicate whether it agreed that it was the responsible operator and explained:

If you agree to accept liability, please mark the applicable section on the enclosed Operator Response Form (CM–970a). This does not mean that you accept eligibility of the claimant for benefits, only that you are accepting liability as the responsible operator within the meaning of the Act, should the claimant subsequently be found entitled to benefits.

Bethenergy Mines denied that it was the responsible operator.

In February of 1981, a claims examiner for the Department made a preliminary finding that Markovich was not entitled to benefits because he was not totally disabled by pneumoconiosis. Markovich retained counsel who requested a hearing before an administrative law judge. In November of 1981, Bethenergy Mines was informed of these developments. The notification states:

Enclosed is a copy of a claim and supporting documents filed with this office under the Black Lung Benefits Act.... We have reviewed the claim and administratively determined that the evidence does not support entitlement under the Act. The claimant has contested our decision.

.        .        .        .        .

You must respond to this notice within thirty days by accepting or controverting the claim for benefits.

.        .        .        .        .

* Hon. Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

Failure to respond within the specified time shall be considered a waiver of your right to contest the claim, unless your failure to respond to notice is excused for good cause.

Bethenergy Mines responded to this notification by means of a form known as an "Operator Controversion." Bethenergy Mines stated that it "joins in" the Department's initial determination that Markovich was not eligible for benefits, and further claimed—unlike the initial determination by the claims examiner—that Markovich did not have pneumoconiosis, that any pneumoconiosis did not arise from his coal mine employment, that Bethenergy Mines was not the responsible operator, and that Markovich had abandoned his claim.

The matter was formally referred for a hearing before an administrative law judge in May of 1984. In July of 1984, Bethenergy Mines withdrew its controversion. The letter of withdrawal stated, "By virtue of the withdrawal of controversion on these issues, the Bethlehem Mines Corporation will not accept responsibility for the incurrence of any attorney's fees by the Claimant on or after this date." The administrative law judge remanded the claim to the deputy commissioner, explaining that there was no issue to be decided at a hearing since the employer "withdrew its controversion and accepted liability."

In March of 1985, the ALJ issued a supplemental decision approving an attorney's fees in the amount of $125 and assessed the fee against Bethenergy Mines. A motion for reconsideration was denied. In July of 1987, the Benefits Review Board affirmed on appeal, and, in December of 1987, denied reconsideration *en banc.* Bethenergy Mines filed this petition for review. *See* 33 U.S.C. § 921(c); 30 U.S.C. § 932.

While the matter was pending in the Department of Labor, Markovich died. His widow is receiving survivor's benefits paid by the Black Lung Disability Trust Fund on behalf of Bethenergy Mines.

## II

■ The Black Lung Benefits Act establishes a complex scheme for providing benefits to coal miners (and their surviving dependents) who become totally disabled (or die) due to pneumoconiosis. 30 U.S.C. § 901–45.[1] If a coal miner is found to be eligible for benefits under the Act, he will receive them, although the source of the funds will vary. *See* 20 C.F.R. § 722.126 ("It is the intent of the Act to insure that every eligible individual who has proven his entitlement to benefits for total disability or death due to pneumoconiosis shall be guaranteed such benefits whether or not there is in existence an employer, coal mine operator, or insurance carrier who is or may be adjudicated liable for the payment of such benefits.") Where a party, such as a coal mine operator, is found responsible under the Act, it will have to pay the benefits. Where there is no responsible party under the Act, the source of the benefits will be the Black Lung Disability Trust Fund. 30 U.S.C. § 932(b); 26 U.S.C. § 9501.

The original legislative plan envisioned that claims filed after December 31, 1973 would be handled under approved state workers' compensation laws. Rather than enact detailed procedures for processing such claims under the Black Lung Benefits Act where the relevant state program had not yet been approved, Congress instead incorporated by reference numerous provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901–950. 30 U.S.C. § 931(a). Perhaps realizing that it may not have anticipated all of the ways in which the procedures established under the LHWCA might not be appropriate for processing black lung claims, Congress granted the Secretary of Labor discretion to deviate from the LHWCA procedures and to prescribe "such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary...." 30 U.S.

---

**1.** The part of the Act relevant to this case is Part C, 30 U.S.C. §§ 931–45, since the claim was filed

after December 31, 1973.

C. § 932(a). This mode of legislating has created difficult problems of interpretation for courts. *See Director, OWCP v. Peabody Coal,* 554 F.2d 310 (7th Cir.1977). If the state programs had in fact taken over the handling of post–1973 claims, much of this difficulty would have quickly passed. But to date, no state workers' compensation program has been approved. 20 C.F.R. 722.152 (1987). Thus the problems of interpretation persist.

The provision of the LHWCA governing the award of attorneys fees reads:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of *a claim for compensation having been filed* from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fees against the employer or carrier....

33 U.S.C. 928(a) (emphasis added). The implementing regulation under the Black Lung Act, with the significant difference highlighted, provides:

> If an operator declines to pay any benefits on or before the 30th day after receiving written notice of *its liability for a claim* on the ground that there is no liability for benefits within the provisions of this Act, and the person seeking benefits shall thereafter have utilized the services of an attorney in the successful prosecution of the claim, there shall be awarded, in addition to the award of benefits, in an order, a reasonable attorney's fees against the operator or carrier....

20 C.F.R. § 725.367(a). The regulations promulgated to process these claims provide that, after filing, a deputy commissioner is to "develop, process, and make determinations with respect to the claim...." § 725.402. At any time during the deputy commissioner's processing of the claim—including before making findings as to claimant's eligibility for benefits—the deputy commissioner may identify the "coal mine operator which may be liable for the payment of the claim." § 725.412.

It is undisputed that if the November 1981 notification had informed Bethenergy Mines that the deputy commissioner found Markovich *eligible* rather than ineligible and if Bethenergy Mines had taken precisely the same position in response that it did (i.e., that it was not responsible and that Markovich was not eligible), Bethenergy Mines would be understood to have "decline[d] to pay any benefits ... after receiving written notice of its liability for a claim." The question is whether the initial finding of ineligibility by the deputy commissioner requires a different result. Bethenergy contends that since it was never requested to pay any benefits, it did not decline to pay any benefits. Markovich and the Director, on the other hand, argue that by contesting the claim after receiving the deputy commissioner's initial findings, Bethenergy Mines did decline to pay benefits after receiving the requisite notice.[2]

At first blush, it might appear that Bethenergy Mines did not receive written notice of its liability, but rather written notice of its non-liability. The Court of Appeals for the Sixth Circuit has concluded that since a coal mine operator has no obligation to pay benefits "until some determination has been made both that the miner was formerly employed by the operator and that he is disabled," a notice which does not include a preliminary determination that the miner is disabled is not a "notice of its liability." *Director, OWCP v. Bivens,* 757 F.2d 781, 788 (6th Cir.1985).[3] Building upon *Bivens,*

**2.** Neither Markovich nor the Director contends that the first notice, which merely identified Bethenergy as the putative responsible operator but contained no findings regarding eligibility, constituted a notice of liability. Therefore, we do not decide whether such a construction of the regulation would be permissible.

**3.** The bulk of the *Bivens* opinion discusses whether, in a case where any benefits awarded will be paid from the Trust Fund, the Director can be understood to have "decline[d]" to pay benefits prior to the time that the Director takes some affirmative step to dispute claimant's entitlement to benefits. The *Bivens* court conclud-

that court held, "If, as *Bivens* teaches, the filing of an unevaluated claim does not constitute a notice of liability, it does not seem to us that notice of liability is given by the [notice of] transfer of a claim that has been evaluated ... and found wanting." *Director, OWCP v. Poyner*, 810 F.2d 99, 103 (6th Cir.1987).[4] *Poyner*, drawing on *Bivens*, emphasizes that notice of potential liability is insufficient under the regulation since "the regulation is not couched in terms of 'potential' liability." 810 F.2d at 102.

Although the *Bivens/Poyner* interpretation of 20 C.F.R. § 725.367(a) is initially attractive, for the reasons which follow, we decline to adopt it. We believe that the distinction between a notice of liability and a notice of potential liability is, in this context, not a meaningful one. A notice that a deputy commissioner has made an initial finding of eligibility is not truly a notice of liability, but only a notice of potential liability, since the operator has the right to contest the initial finding. 20 C.F.R. §§ 725.414, 725.419. Indeed, the Benefits Review Board has referred to notices of "potential liability" without indicating whether the initial findings were in favor of eligibility or not. *E.g., O'Quinn v. The Pittson Company*, 4 B.L.R. 1–25 (1981); *Christensen v. U.S. Steel*, 3 B.L.R. 1–817 (1981). In both of these cases, the context suggests that the initial findings were in favor of liability. Thus both a notification containing an initial finding of eligibility and a notification containing an initial finding of ineligibility are only notifications of potential liability; the question is whether one kind of notification of potential liability triggers the obligation to take a position on the claim at the risk of paying attorneys fees while the other does not.

More importantly, in our view the *Bivens/Poyner* approach does not adequately take into account the statutory and regulatory framework. Under the LHWCA, 33 U.S.C. § 928(a), written notice of a claim is sufficient to require the employer to decide within 30 days whether to pay benefits or contest the claim. If the employer fails to respond or chooses to contest the claim, it must pay the claimant's attorneys fees if the claimant is successful. "A claimant, whose claim is resisted by a carrier, who successfully prosecutes that claim has an absolute right to recover his legal expenses incurred in that prosecution." *Overseas African Construction Corp. v. McMullen*, 500 F.2d 1291 (2d Cir.1974). Thus if the Secretary of Labor had not promulgated 20 C.F.R. § 725.367, mere notice of a miner's claim would trigger the 30 day period in which an operator must decide whether to contest the claim.

The Secretary altered certain procedures of the LHWCA because "the primary focus of the procedures set forth in that Act is upon a time definite or traumatic injury or death," while this is not true of Black Lung cases. 20 C.F.R. § 725.1(j). Due to the progressive nature of pneumoconiosis, a coal mine operator is less likely to know the details underlying a particular claim than an employer is in the typical case arising under the LHWCA. *See Bivens*, 757 F.2d at 788. This is apparently the reason for not requiring the operator to decide whether to contest a claim within 30 days after receiving notice of the claim.[5]

The regulations, however, do require an operator who is identified as potentially liable to decide within 30 days whether to "accept or contest liability." 20 C.F.R. § 725.413(a). In addition, if initial findings have been made, "the operator shall indi-

---

ed that such inaction could not be considered as declination. 757 F.2d at 787; *contra Director, OWCP v. Simmons*, 706 F.2d 481 (4th Cir.1983). We offer no opinion on this aspect of the *Bivens* decision. It is plain that Bethenergy, by filing its controversion, took an affirmative step to dispute Markovich's entitlement to benefits.

**4.** *Poyner* concerned a claim which had been initially evaluated by the Department of Health, Education, and Welfare and then transferred to

the Department of Labor. *See* 30 U.S.C. § 945(a)(2)(B)(ii). There is no indication, however, that the court would treat an unfavorable initial evaluation by the Department of Labor any differently.

**5.** Since no party challenges the Secretary's authority to deviate from the statute in this manner, we accept the deviation for purposes of this case.

cate its agreement or disagreement with each such finding." § 725.413(a). This must be done whether or not the deputy commissioner has found that the claimant is eligible for benefits.

The notification given to the operator who is identified as potentially liable includes "a copy of the claimant's claim form and a copy of all documentary evidence pertaining to the claim obtained by the deputy commissioner." 20 C.F.R. § 725.412. Once this information is provided to the operator—at least where the deputy commissioner has developed sufficient evidence to make initial findings as to eligibility—it is perfectly reasonable to require the operator to decide whether to accept liability or contest the claim. Moreover, once such information is provided, there is scant reason to treat a coal mine operator more favorably than an employer subject to the LHWCA. A coal operator who is armed with this information is in at least as good a position to make this decision as an employer who simply receives a notice of a claim under the LHWCA.

The *Bivens/Poyner* approach produces results which are difficult to reconcile with the purpose of the attorney fee provision incorporated in the Black Lung Act. Under that approach, if the deputy commissioner makes an initial finding of non-eligibility and the operator agrees that the miner is not eligible but the miner ultimately prevails against the operator, the miner will not be able to recover his attorney's fees from the operator. There would be little reason to impose the fees on the Trust Fund, since the Fund would not be paying the benefits and since the operator had declined to pay benefits for which it was ultimately found responsible. *Cf. Republic Steel v. U.S. Dept. of Labor*, 590 F.2d 77 (3d Cir.1978) (Trust Fund, not employer, must pay attorneys fees; case involved situation where it was clear that Trust Fund, not employer, was required to pay benefits). The miner, therefore, would have to bear the legal expense of proving his entitlement to benefits payable by the operator. The statutory provision seems designed to prevent precisely such a result. *See id.* at 81. If the Director, as the desig-

nee of the Secretary of Labor, interpreted the regulation to require this result, we might defer to that interpretation despite our misgivings. *See Mullins Coal Co. v. Director, OWCP*, — U.S. ——, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987); *Bethlehem Mines Corp. v. Director, OWCP*, 766 F.2d 128, 130 (3d Cir.1985). The Director, however, interprets the regulation to impose attorneys fees on operators who are unsuccessful in contesting claims even if the initial determination by the deputy commissioner is that the claimant is not entitled to benefits. In light of the statute, we have no difficulty accepting this interpretation.

■ With regard to Bethenergy Mines's contention that it was never asked to pay benefits, we simply observe that it was notified that Markovich disputed the initial finding of non-eligibility. Thus Bethenergy Mines was certainly aware that Markovich was asking it to pay him benefits. We know of no reason to require that the *Department* request the payment of benefits before imposing responsibility for a claimant's attorneys fees. 33 U.S.C. § 928(a) and 20 C.F.R. § 725.367 are not designed to compel a recalcitrant operator to comply with orders of the Department of Labor. *Cf.* 33 U.S.C. 921(d); 30 U.S.C. § 934(b). Instead they are rather straightforward fee-shifting devices, designed to ensure that a claimant's disability benefits not be eroded by legal fees. An operator is given 30 days to evaluate the claim and decide whether or not to pay it. If the operator chooses to contest the claim, it must pay the claimant's attorneys fees if the claimant is successful. We conclude that notification of an initial finding of non-entitlement, at least where coupled with a statement that the claimant continues to press the claim, is a sufficient notification of liability to trigger the 30 day period in which the operator must decide, at the risk of paying the claimant's attorneys fees, whether to contest the claim.

### III

■ We now turn to the second question for decision, whether a claimant has "uti-

lized the services of an attorney in the successful prosecution of the claim" where, after the claimant hires an attorney, the operator withdraws its controversion. Bethenergy Mines argues that an order awarding benefits is required before the claimant can be said to have successfully prosecuted the claim. Markovich and the Director contend that the withdrawal of controversion is a concession that Markovich is entitled to benefits, and therefore the claimant has succeeded.

The Director's interpretation is perfectly reasonable and we defer to it. The regulations specifically provide that a failure to respond to initial findings is "considered a waiver of [the] right to contest the claim." 20 C.F.R. § 725.413(b). The same conclusion is warranted where the operator withdraws its objections to a claim. We will, therefore, affirm the assessment of attorneys fees against Bethenergy Mines. The Director concedes that Bethenergy Mines is not obligated to actually pay the attorneys fees until an order is formally entered granting an award of benefits. For this reason, we will modify the order of the Board to so provide.

Lurking under the surface is the question whether the Department should evaluate a claimant's eligibility after an operator has withdrawn controversion or whether it should simply compute the benefits due and enter an appropriate order. We understand that the Benefits Review Board is currently considering this issue. *Capelli v. Bethlehem Mines Corporation*, No. 86–1130 (BLA), argued May 3, 1988. We offer no opinion on this question. The only reason for such an evaluation that occurs to us is to protect the Trust Fund in the event the operator cannot pay the benefits it concededly owes. If the Department of Labor does not find this a necessary precaution, we are certainly not in a position, at least in this case, to say that it should.

## IV

We conclude that a coal mine operator who receives an initial determination by a deputy commissioner that a claimant is not eligible for Black Lung benefits, is in-

formed that the claimant disputes this initial determination, and files a controversion of the claim, has "decline[d] to pay benefits ... after receiving written notice of its liability for benefits." We also conclude that where the claimant hires an attorney and the operator withdraws its controversion prior to the hearing before an administrative law judge, the claimant has "utilized the services of an attorney in the successful prosecution of the claim." Accordingly, we will enforce the order of the Benefits Review Board assessing attorneys fees against Bethenergy Mines, as modified to provide that there is no obligation to actually pay the fees until a formal order awarding benefits has been entered.